## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| | : | **CASE NO. 1:19-CV-00223** |
| **TIMOTHY SMITH** | : | |
| **2860 Forest Run Drive** | : | |
| **Melbourne, FL 32935** | : | **Judge** |
| | : | |
| ***On behalf of himself and those similarly*** | : | |
| ***situated,*** | : | |
| | : | |
| **Plaintiff,** | : | <u>**CLASS ACTION COMPLAINT AND**</u> |
| | : | <u>**JURY DEMAND**</u> |
| **v.** | : | |
| | : | |
| **QUALIFIED EMERGENCY** | : | |
| **SPECIALISTS, INC.** | : | |
| **10506 Montgomery Road, Suite 209** | : | |
| **Cincinnati, OH 45242** | : | |
| | : | |
| **and** | : | |
| | : | |
| **CHOICE RECOVERY, INC.** | : | |
| **1550 Old Henderson Road, Suite 100 S** | : | |
| **Columbus, OH 43220** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

Plaintiff Timothy Smith brings this action against Qualified Emergency Specialists, Inc.

("QESI") and Choice Recovery, Inc. ("Choice Recovery").

1

## NATURE OF THE ACTION

1.      Defendant QESI provides emergency medical services to patients in need of medical assistance. QESI has contracts with medical health insurance companies in the State of Ohio. Under Ohio Revised Code ("R.C.") § 1751.60, QESI is required to submit all claims for a patient's medical services to the patient's health insurance company when QESI has a contractual relationship with that health insurance company. In an attempt to secure greater payments and income, QESI intentionally refuses to first submit the claims for payment to patients' health insurance companies with whom QESI has contractual relationships. Instead, QESI intentionally demands payment directly from the insured patients, in violation of R.C. § 1751.60.

2.      QESI conspires with Defendant Choice Recovery in furtherance of these violations. Choice Recovery, acting as QESI's co-conspirator and debt collections agent, attempts to unlawfully extract payment directly from the insured patients. When an insured refuses to pay the unlawfully demanded payment from QESI, Choice Recovery steps in to engage in the activities prevalent in the collections agency world: numerous harassing contacts, telephone calls, and filing negative reports with national credit-rating agencies.

3.      Plaintiff, on behalf of himself and all other similarly situated Class Members, allege the following seven claims against Defendants: (1) breach of contract; (2) tortious interference with a business relationship; (3) civil conspiracy; (4) unjust enrichment; (5) fraud; (6) violations of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.*; and (7) injunctive relief.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the Class is a citizen of a different state than Defendants, and on information and belief there are more than 100 members of the Class and the aggregate amount in controversy exceeds $5 million exclusive of interest and costs.

5. This court also has federal question jurisdiction over the action under 28 U.S.C. § 1331 for the claims brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.* and supplemental jurisdiction over the state law claims that form part of the same case or controversy as the FDCPA allegations under 28 U.S.C. § 1367.

6. Venue is appropriate because Defendant QESI's principal place of business is in Cincinnati, Hamilton County, Ohio.

## THE PARTIES

7. Plaintiff Timothy Smith ("Plaintiff") is a resident of the State of Florida, and was in Hamilton County, Ohio when he was involved in an auto collision on March 13, 2017. Mr. Smith received medical treatment from QESI at Bethesda North Hospital in Cincinnati, Ohio on March 13, 2017, for injuries suffered in the auto collision.

8. QESI, an Ohio corporation with its principal place of business in Cincinnati, Ohio, is a group of physicians, physician assistants and nurse practitioners providing emergency department care and services to patients at Bethesda Arrow Springs Hospital, Bethesda Butler County Hospital, Bethesda North Hospital, Good Samaritan Hospital, and Good Samaritan Western Ridge Hospital, all within Southwest Ohio.

9.     Choice Recovery, an Ohio corporation with its principal place of business in Columbus, Ohio, collects payments that are allegedly owed to entities other than itself, including on behalf of Defendant QESI. Choice Recovery sent letters to and otherwise contacted Plaintiff to assist Defendant QESI in collecting the money it claimed was due. Upon information and belief, Plaintiff alleges that Choice Recovery reported an unpaid medical bill to Equifax, a credit reporting agency.  Upon information and belief, upon a Class Member's refusal to pay the unlawfully sought funds, Choice Recovery files a negative report with the national credit-reporting agencies.

**FACTS**

*Plaintiff Smith*

10.     Plaintiff was injured in an auto collision of March 13, 2017 in Hamilton County, Ohio.

11.     Plaintiff received medical treatment from QESI at Bethesda North Hospital the same day for the injuries he suffered in the auto collision.

12.     Plaintiff informed the admission staff at Bethesda North Hospital, who collected intake information on behalf of QESI, that he had health insurance coverage with United Health Care ("UHC"), an Ohio health insurance corporation, and provided all relevant information necessary to submit claims for coverage.

13.     After Plaintiff provided Defendant QESI with his UHC insurance coverage on March 13, 2017, QESI, its agents, medical staff, owners, and/or employees administered medical care to Plaintiff.

14.     Defendant QESI had and continues to have a contractual relationship with UHC regarding the amounts UHC will pay for treatment rendered to its insureds, including Plaintiff.

15.     After receiving Plaintiff's UHC insurance coverage information and after administering medical treatment and services to Plaintiff on March 13, 2017, at Bethesda North Hospital, Defendant QESI, including its agents, failed and/or refused to submit bills for medical services it rendered to Plaintiff to UHC for payment and/or insurance coverage.

16.     Instead, QESI, its agents, employees, and owners, sought payment for the medical services rendered to Plaintiff directly from him without first submitting the request for payment for such medical services and treatment to Plaintiff's health insurer, UHC.

17.     On or about July 31, 2018, Plaintiff's legal representative issued a letter to QESI and notified QESI that it had improperly billed Plaintiff relating to the medical services he received on March 13, 2017.  Plaintiff's legal representative reissued the letter twice more—in August 2018 and in October 2018—and was met with the same lack of response. Each letter informed QESI that QESI's billing practices were in violation of R.C. § 1751.60.

18.     UHC has not paid any amount to Defendant QESI on behalf of Plaintiff.

19.     On December 14, 2018, Choice Recovery demanded $609.00 directly from Plaintiff on behalf of "creditor" QESI. Although QESI had not previously submitted a request for payment from UHC, Plaintiff's health insurer, according to Choice Recovery it had "verified the debt" with QESI and was therefore seeking the $609. The $609 included a charge of $5 that had been added to the bill without authorization from Plaintiff.

20.     Despite several communications from Plaintiff or his legal counsel identifying UHC as Plaintiff's health insurer, QESI and Choice Recovery continued to attempt to collect the $609.00 directly from him. Eventually Plaintiff paid the outstanding amount because it appeared as a past due item on his credit report.

5

*QESI's obligations under Ohio statute*

21.     At all times relevant herein, R.C. § 1751.60 requires that medical providers, such as Defendant QESI, seek payment for covered medical services directly from the patient's health insurance company, and not directly from patients, such as Plaintiff, except for certain deductibles and copayments.

22.     At all times relevant herein, Defendant QESI has willfully and intentionally refused to submit, and/or avoided submitting, claims for payments relating to medical services administered to patients to the patients' health insurance companies. Defendants refused to submit such claims to the patients' health insurance companies for the purpose of increasing revenue and profits so that it could receive from the patients a higher rate than it was contractually obligated to accept under agreements with the patients' health insurers.

23.     At all times relevant herein, Defendant QESI directly and intentionally violated Ohio R.C. § 1751.60, and conspired with Defendant Choice Recovery to intentionally violate R.C. § 1751.60, by collecting and attempting to collect payments directly from QESI's patients, such as Plaintiff, without first seeking payment from the patients' health insurers, including at a rate that exceeds the rate contractually agreed to between QESI and the health insurers for such medical services.

24.     To avoid continued harassment from Defendants and a negative report filed with the credit-reporting agencies, Plaintiff and some Class Members were forced to pay Defendants.

25.     Any amount paid by Plaintiff or Class Members to Defendants to satisfy funds sought in violation of R.C. § 1751.60 was based upon the wrongful conduct of Defendants and under duress or coercion, or paid as a result of the fraud, extortion, or misrepresentations made by Defendants.

26.     A group of the Class Members—the Subclass members—who did not pay, or paid under duress, coercion, as a result of fraud, extortion, or misrepresentations made by Defendants, have had negative reports issued to credit-reporting agencies by Defendants.

## CLASS ALLEGATIONS

27.      Under Rule 23(a), (b)(2), (b)(1)(A), and (b)(3), Plaintiff brings this action on behalf of himself and the Class, initially defined as follows:

> **All individuals who are insureds of a health insurance company with an existing contract for payment of medical services with Qualified Emergency Specialists, Inc. (QESI) and from whom QESI, or Choice Recovery on behalf of QESI, sought and received payment directly for medical services rendered to the insured without first submitting a request for payment to the individuals' health insurance companies during the Relevant Time Period.**

28.     Under Rule 23(a), (b)(2), (b)(1)(A), and (b)(3), Plaintiff also brings this action on behalf of himself and a Subclass, initially defined as follows:

> **All individuals who are members of the Class and who have had negative reports issued to any credit-reporting agency by Defendants, arising out of or relating to Defendants' actions in seeking funds from the individuals in violation of R.C. § 1751.60.**

29.     The "Relevant Time Period" is the largest period allowed by law.

30.     Excluded from the Class are Defendants, their employees, officers, director, legal representatives, heirs, successors, and wholly or partially owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

31.     The definitions of the Class and Subclass are unambiguous, and Plaintiff is a member of the Class and Subclass that he seeks to represent.

32.     The Class and Subclass are so numerous that joinder of all their members is impracticable. Due to the nature of trade and commerce involved, the members of the Class and

Subclass are geographically dispersed throughout Ohio, Northern Kentucky, Indiana, and other states such that joinder of all Class Members would be impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, on information and belief Defendant QESI has administered medical services and care to at least many thousands of Class Members, and then sought payment for such services directly from the Class Members without first seeking payment from the Class Members' health insurer with whom QESI has a contractual relationship relating to such medical services. While the exact number of Subclass Members is unknown to Plaintiff at this time, Defendants have issued negative reports to credit-reporting agencies and companies regarding at least many thousands of Subclass Members based on Defendants' unlawful attempts to seek fees in violation of R.C. § 1751.60.

33. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other Class Members were subject to and did receive direct requests for payment from QESI for medical services QESI provided without first seeking payment for such medical services from Plaintiff and the other Class Members' health insurers, with whom QESI had and has contractual relationships.

34. Plaintiff's claims are typical of the claims of the other members of the Subclass. Plaintiff and the other Subclass Members were subject to Defendants' unlawful reporting of negative credit information to credit-reporting agencies based upon Defendants' unlawful attempts to collect monies in violation of R.C. § 1751.60.

35. Plaintiff will fairly and adequately protect the interests of the members of the Class and the Subclass and has retained counsel competent and experienced in class action litigation.

36. Defendants have acted or refused to act on grounds generally applicable to the Class and the Subclass, thereby making it appropriate for the Court to render final injunctive relief

8

regarding the Class as a whole and the Subclass as a whole. Specifically, Defendants continued to collect payment from Class Members even after being notified that such requests for payment from the Class Members violated Ohio law. Where Subclass Members refuse to pay, or initially refuse to pay but eventually pay under duress, coercion, extortion, or based upon Defendants' misrepresentations, Defendants have conveyed negative information about the Subclass Members to national credit-reporting agencies.

37.     Common questions of law and fact exist as to all Class Members and Subclass Members and predominate over any questions solely affecting individual members thereof. Among the common questions of law and fact are the following:

a.     Did Defendants submit their request for payment to the Class Members' health insurers relating to the medical services provided to Class Members?

b.     Did Defendants intentionally refuse to submit the request for payment to the Class Members' health insurers?

c.     Whether Defendants sought payment for medical services rendered to the Class Members directly from the Class Members without first submitting the request for payment to the Class Member's health insurer?

d.     Whether QESI entered into an agreement with Choice Recovery, as QESI's co-conspirator, to collect the amount of the outstanding medical bill directly from the Class Member?

e.     When and how often did Defendants convey negative reports about the Subclass to the credit-reporting agencies?

f.     What relevant information was conveyed to the credit-reporting agencies in the contents of these negative reports about the Subclass?

9

38.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class Members and Subclass Members is impracticable. The prosecution of separate actions by individual Class Members and Subclass Members would impose heavy burdens upon courts, Class Members, Subclass Members and Defendants, and would create the risk of inconsistent adjudications of questions of law and fact common to the Class and Subclass. Defendants have acted on grounds generally applicable to the class such that the final injunctive relief sought is appropriate respecting the class as a whole. In addition, the allegations contain herein show that common questions of law and fact predominate over any questions affecting individual Class or Subclass members and a class action is therefore superior to other available methods for fairly and efficiently adjudicating the controversy. A class action would achieve substantial economies of time, effort, and expense, and would assure uniformity as to persons similarly situated without sacrificing procedural fairness. Plaintiff and the proposed Class and Subclass satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

39.     All other paragraphs are fully re-alleged and incorporated herein.

40.     Plaintiff and other Class Members and Defendant QESI entered into an implied contractual relationship wherein QESI would provide medical treatment and services to Plaintiff and other Class Members for consideration.

41.     Under R.C. § 1751.60, Defendant QESI, including its agents, owners, and employees, were required to submit all claims for payment for medical services rendered to Plaintiff and other Class Members to the health insurers of Plaintiff and the other Class Members.

42.     Under R.C. § 1751.60 and a contract it had with Plaintiff and the other Class Members' health insurers, Defendant QESI was required to submit all claims for payment for medical services rendered to Plaintiff and other Class Members to the health insurers of Plaintiff and the other Class Members.

43.     Defendant QESI, in conjunction with the actions of co-conspirator, Defendant Choice Recovery, breached QESI's contractual and statutory duties to Plaintiff and other similarly-situated Class Members.

44.     Plaintiff and other Class Members have suffered damages as a direct and proximate result of Defendants' breaches of contract.

## COUNT II – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

45.     All other paragraphs are fully re-alleged and incorporated herein.

46.     Plaintiff and other Class Members had valid business relationships with their health insurers, such as UHC, by virtue of an express or implied contract existing between them relating to health insurance coverage.

47.     Plaintiff and other Class Members notified Defendants of the presence of the business relationship existing between Plaintiff and other Class Members and their health insurers before receiving emergency room medical services from Defendant QESI.

48.     Defendants intentionally and improperly interfered with and caused disruption to Plaintiff and other Class Members' business relationships by preventing them from receiving the benefit of their relationships, including insurance coverage for medical services, with their health insurers.

49.     Defendants' actions have caused Plaintiff and other Class Members to suffer damages in the form of paying for medical services at a rate that they would not have had to pay

11

if Defendants submitted such claims for payment for medical services to Plaintiff and the other Class Members' health insurers, as required under R.C. § 1751.60.

50.     Defendants' actions in interfering with Plaintiff and other Class Members' business relationships with their health insurers was without justification or privilege.

51.     Defendants' actions have directly and proximately caused injury to Plaintiff and the other Class Members.

## COUNT III – CIVIL CONSPIRACY

52.     All other paragraphs are fully re-alleged and incorporated herein.

53.     Defendants have engaged in a civil conspiracy to unlawfully injure Plaintiff and other Class Members. Their actions in agreeing to collect medical bills from Plaintiff and the Class Members in a manner that willfully and intentionally violates Ohio law is a malicious combination with the purpose of injuring Plaintiff and Class Members in a way not competent for one alone, resulting in actual damages.

54.     Defendants' actions in violation of R.C. § 1751.60 are unlawful acts independent of the actual conspiracy between them.

55.     Defendants' actions in tortiously interfering with Plaintiff and other Class Members' business relationships with health insurers are acts independent of the actual conspiracy between Defendants.

56.     Defendants' actions in committing fraud against Plaintiff and other Class Members are tortious acts independent of the actual conspiracy between Defendants.

57.     Defendants have purposely committed, aided, and/or benefitted from the underlying unlawful or tortious acts, without a reasonable or lawful excuse, to the injury of Plaintiff and the Plaintiff Class.

12

58.     The unlawful or tortious acts of the Defendants are attributable to each other. All Defendants have agreed to and acted in pursuance of a common plan or design to commit unlawful or tortious acts, actively took part in it, and ratified and adopted the wrongdoer's act done for their benefit.

59.     Plaintiff and the other Class Members have suffered damages, as described elsewhere herein, as a direct and proximate result of Defendants' civil conspiracy.

**COUNT IV – EQUITABLE RESTITUTION BASED ON UNJUST ENRICHMENT**

60.     All other paragraphs are fully re-alleged and incorporated herein.

61.     QESI has engaged in a pattern of deceitful and intentional conduct in refusing to submit claims for payment relating to medical services rendered to Plaintiff and Class Members first to their health insurers as required under R.C. § 1751.60. Choice Recovery has engaged in a pattern of deceitful and intentional conduct in seeking monies it knows neither it nor QESI have any lawful right to from members of the Class.

62.     Defendants were conferred a benefit by Plaintiff and Class Members when they paid monies based upon invalid and/or unlawful medical bills/invoices.

63.     Defendants knew of the benefits conferred on them by Plaintiff and other Class Members and accepted the payments premised upon the existence of invalid and/or illegal medical bills/invoices.

64.     Defendants' retention of these payments is unjust under the circumstances of this case because the acceptance of such payments is premised upon the existence of invalid and/or illegal medical bills/invoices, making it wholly inequitable for Defendants to improperly retain the benefits of Plaintiff and the other Class Members' payments and entitling Plaintiff and the other Class Members who made such payment to full restitution, including interest.

13

65.     Allowing Defendants to retain the aforementioned payments violates fundamental principles of fairness and equity.

**COUNT V – COMMON LAW FRAUD**

66.     All other paragraphs are fully re-alleged and incorporated herein.

67.     At all times relevant, in pursuing payments directly from patients, including Plaintiff and other Class Members, in a manner barred by Ohio law, Defendants, by and through their agents, servants and/or employees, falsely represented to the Class Members that the Class Members owed Defendants certain sums of money, with knowledge of, utter disregard for, or recklessness as to the falsity of the truth, which was that under R.C. § 1751.60, Defendants were prohibited from seeking the sums of money they sought from the Class Members. Knowledge of the falsity may therefore be inferred.

68.     Defendants falsely represented to credit reporting agencies that Plaintiff and other Subclass Members were delinquent in paying their bills, thereby adversely affecting Plaintiff and other Subclass Members' credit.

69.     Defendants falsely represented the amounts owed by the Plaintiff and other Class Members including, but not limited by, adding service charges to the unpaid bills that Plaintiff and other Class Members had not authorized.

70.     These representations were material, as they more likely than not have had and will continue to have an effect on Plaintiff and the other Class Members and Subclass Members.

71.     These representations were made with the intent of misleading patients, including Plaintiff and the Class Members, for the purpose of obtaining unlawful proceeds from Plaintiff and the Class Members.

14

72.     The patients, including Plaintiff and the Class Members, were justified in relying upon these representations, and did in fact rely upon them. Defendants, as medical servicer and co-conspirator demander of payment, are the only entities in possession of the information required to submit medical bills to Plaintiff and the Class Members' health insurance companies, and so Plaintiff and the other Class Members must rely upon Defendants to accurately invoice both the medical insurance companies and the patients and accurately represent to patients the amounts patients owe Defendants, if any.

73.     These patients, including Plaintiff, the Class Members, and the Subclass Members, were injured by these material misrepresentations, and the injury was proximately or directly caused by the patients' reliance on Defendants' misrepresentations, when they paid the amounts unlawfully requested, when their credit reports falsely indicated past due accounts, and when Choice Recovery contacted them for payments that were not due.

74.     Defendants QESI and Choice Recovery actively benefitted from the actions of themselves and of each other relating to these misrepresentations.

75.     As a direct and proximate result of Defendants acts or omissions, Plaintiff and the Class Members have incurred damages and are entitled to the relief further described below.

**COUNT VI – VIOLATION OF FEDERAL FAIR DEBT COLLECTION PRACTICES ACT BY DEFENDANT CHOICE RECOVERY**

76.     All other paragraphs are fully re-alleged and incorporated herein.

77.     At all times relevant herein, Plaintiff was a "consumer" as defined under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.*

78.     At all times relevant herein, Defendant Choice Recovery was a "debt collector" as defined under the Fair Debt Collection Practices Act.

15

79.     In seeking to recover funds that it knows QESI and it have no lawful right to, or right to demand, Defendant Choice Recovery has violated the Fair Debt Collection Practices Act including, but not limited to:

a.     Using false, deceptive, or misleading representations or means in connection with the collection of any debt;

b.     Using unfair or unconscionable means to collect or attempt to collect any debt;

c.     Making false representations of the character, amount or legal status of any debt;

d.     Making false representations of any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt;

e.     Collecting or attempting to collect a debt that it is not entitled to under Ohio law;

f.     Making threats to take any action that cannot legally be taken or that is not intended to be taken;

g.     Using false representation or deceptive means to collect or attempt to collect any debt;

h.     Collecting or attempting to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

80.     As a direct and proximate result of Defendant's violations of the Fair Debt Collection Practices Act, Plaintiff, the Class Members, and the Subclass Members have incurred damages and are entitled to other relief further outlined herein.

## COUNT VII – INJUNCTIVE AND OTHER EQUITABLE RELIEF

81.     All other paragraphs are fully re-alleged and incorporated herein.

82.     Under R.C. § 1751.60, Defendants were required to submit Plaintiff's and Class Members' medical bills to their health insurers first before attempting to collect on such bills from Plaintiff and/or Class Members.

83.     Defendants violated R.C. § 1751.60 by failing to first bill the health insurers for Plaintiff and other Class Members for medical services QESI provided to Plaintiff and such other Class members and instead directly billed them to Plaintiff and such Class Members.

84.     Plaintiff and Class Members have a substantial likelihood of success of prevailing on their breach of contract, tortious interference with a business relationship, fraud, civil conspiracy, FDCPA, and unjust enrichment claims.

85.     Plaintiff and Class Members have been irreparably injured and will continue to suffer irreparable injury by being forced to pay for medical bills they are not legally obligated to pay, in full or in part, in direct violation of state and/or federal law.

86.     Moreover, Plaintiff and Class Members will be irreparably injured if Defendants report to credit-reporting agencies that Plaintiff and Class Members have not paid these bills, despite the clear legal prohibition on seeking to force Plaintiff and Class Members to remit such payments.

87.     In addition, Plaintiff and the Subclass Members will be irreparably injured if Defendants do not issue clarifying reports to the credit-reporting agencies that the negative reports were wrongly issued and should be removed from Plaintiff and the Subclass Members' credit profiles and reports.

88.     No third parties will be harmed if Plaintiff and Class Members are granted their request for injunctive and other equitable relief in this matter.

17

89.     The public interest will be served in granting Plaintiff and other Class Members' request for injunctive and other equitable relief in this case because it will force Defendants to stop violating Ohio law.

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, prays for the following judgment,

a.     Certifying this case as a Class Action under Federal Rule of Civil Procedure 23 and appointing Plaintiff as the class representative for the proposed Class and Subclass;

b.     Appointing Plaintiff's legal counsel as Class Counsel for the proposed Class;

c.     Requiring Defendants to comply with R.C. § 1751.60;

d.     Granting Plaintiff and Class Members preliminary, and permanent injunctive relief immediately enjoining Defendants from further violating state and federal law, including but not limited to R.C. § 1751.60, from further billing Plaintiff and other Class Members directly before submitting such medical bills for payment to Plaintiff and other Class Members' health insurers, and from forwarding any information to credit rating agencies with regard to Plaintiff and other Class Members' payment of these unlawful fees;

e.     Awarding Plaintiff and Class Members damages in an amount to be determined at trial;

f.     Awarding Plaintiff and Class Members compensatory damages in an amount that exceeds the amount in controversy threshold for this Court;

g.     Awarding Plaintiff and Class Members punitive damages from Defendants as a result of Defendants' willful and intentional conduct;

h.    Awarding Plaintiff and Class Members any and all damages allowed pursuant to 15 U.S.C. §1692, *et seq.*;

i.    Requiring Defendants to make full restitution to Plaintiff and all similarly situated Class Members who made payments in response to Defendants' unlawful demands for payment;

j.    Requiring Defendants to issue corrections on behalf of all Subclass Members to all credit-reporting agencies, informing these agencies that the negative reports were issued in error and any negative effect inuring to Subclass members from these reports must be remedied;

k.    Ordering Defendants to pay the cost of this lawsuit and reasonable attorneys' fees; and,

l.    Awarding any such other and further legal and equitable relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ W. B. Markovits*
W.B. Markovits (0018514)
Paul M. De Marco (0041153)
Zachary C. Schaengold (0090953)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax:  (513) 665-0219
*bmarkovits@msdlegal.com*
*pdemarco@msdlegal.com*
*zschaengold@msdlegal.com*

and

Charles M. Rittgers (0086567)
RITTGERS & RITTGERS

19

12 East Warren Street
Lebanon, Ohio 45036
Telephone:  (513) 932-2115
Fax: (513) 934-2201
*charlie@rittgers.com*

*Counsel for Plaintiff, the Class, and the Subclass*

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims triable to a jury.

*/s/ W.B. Markovits*
W.B. Markovits (0018514)